UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDWARD PINCHON,<br><br>  Petitioner,<br><br>v.<br><br>RUSSELL WASHBURN,<br><br>  Respondent. | Case No. 3:16-cv-03031<br><br>Visiting Judge Laurie J. Michelson<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Laurie J. Michelson, Visiting District Judge

### REPORT AND RECOMMENDATION

This case concerns the constitutionality of de facto life without parole sentences for juvenile offenders and the scope of relief available to incarcerated people challenging their confinement under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).[1] In September 1999, a Tennessee jury convicted Petitioner Edward Pinchon of first-degree murder in the 1997 shooting death of Leslie Handy. *State v. Pinchon*, No. M1999-00994-CCA-R3-CD, 2000 WL 284071, *1 (Tenn. Crim. App. Mar. 17, 2000). Pinchon, who is intellectually disabled, was seventeen at the time of Handy's death and involved in a sexual relationship with Handy, who was older than forty. *Pinchon v. Myers*, 615 F.3d 631, 635, 641 (6th Cir. 2010), *cert. denied*, 563 U.S. 962 (2011); *id.* at 644 (Cole, J., concurring). "Despite his intellectual deficiencies, Pinchon's case was transferred from juvenile to criminal

---

[1] De facto life without parole refers to "cases where a juvenile defendant is sentenced to life with the possibility of parole arising only after an extraordinarily lengthy term of years that may reach or exceed the defendant's life expectancy." *Atkins v. Crowell*, 945 F.3d 476, 481 (6th Cir. 2019) (Cole, C.J., concurring), *cert. denied*, --- S. Ct. ---, 2020 WL 2515778, at *1 (May 18, 2020).

court, where he was tried as an adult and convicted." *Id.* at 645 (Cole, J., concurring). Pinchon is now serving a sentence of life imprisonment. *See State v. Pinchon*, 2000 WL 284071, at *1; Tenn. Code Ann. § 39-13-202(c)(3) (1997).

Before the Court is Pinchon's amended petition for a writ of habeas corpus under 28 U.S.C. § 2254, asserting that his sentence is prohibited under *Miller v. Alabama*, 567 U.S. 460 (2012), which declared mandatory sentences of life without parole for juvenile offenders unconstitutional. (Doc. No. 25.) Pinchon initially filed this action pro se. (Doc. No. 1.) The Court appointed counsel (Doc. No. 9) and granted Pinchon's request to file an amended petition restating his claims (Doc. No. 23). Respondent Washburn answered the amended petition and filed the state-court record.[2] (Doc. Nos. 27, 28.) Pinchon filed a reply (Doc. No. 29) and, at the Court's request (Doc. No. 36), both parties filed supplemental briefs (Doc. Nos. 38, 39). Washburn also filed a response to Pinchon's supplemental brief. (Doc. No. 40.)

Pinchon's amended petition requests an evidentiary hearing but does not explain why a hearing is necessary. (Doc. No. 25.) The Court need not hold an evidentiary hearing where "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). In determining whether an evidentiary hearing is necessary, the Court must consider the "deferential standards prescribed by [AEDPA,]" under which a state court's factual findings are presumed correct unless a petitioner rebuts them by clear and convincing evidence. *Id.*; 28 U.S.C. § 2254(e)(1). Having reviewed the parties' arguments and the underlying record, the Court finds that an evidentiary hearing is not required. For the reasons that

---

[2] The state-court record, as filed, "includes all of the submissions in the post-conviction court, the [Tennessee Court of Criminal Appeals (TCCA)], and the Supreme Court of Tennessee on the *Miller* claim." (Doc. No. 28, PageID# 325.) It does not include "[t]he complete state-court record of [Pinchon's] trial, direct appeal, and earlier post-conviction proceedings . . . ." (*Id.*)

follow, AEPDA precludes Pinchon's requested relief. The Magistrate Judge will therefore recommend that the amended petition be denied.

## I. Background

### A. Factual Background

In the context of Pinchon's direct appeal from his conviction and sentence, the Tennessee Court of Criminal Appeals (TCCA) provided the following summary of the evidence presented at trial:

> In the light most favorable to the state, the facts of the case are as follows. The defendant was seventeen years old on April 21, 1997, and he had been spending time, including overnight visits with the victim, Leslie Handy, a 42 or 43 year-old homosexual male. Although the defendant slept in the victim's bed when he stayed overnight, he testified that their sexual activity was limited to the victim fellating him. The victim occasionally purchased clothes for the defendant, and at the victim's request, the defendant kept these clothes at the victim's residence.
>
> Much of the evidence inculpating the defendant came from the testimony of Mary Jones, who was the victim's neighbor and had known him since he was a young boy when he had gone to school with her children. She had known about the victim's relationship with the minor defendant for "six months to a year." She testified the defendant would stay at the victim's house for about five nights a week and that they got along "pretty good." However, three or four days before April 21, she was in her lawn talking to the victim, who was a few feet away inside his kitchen, when she heard a slap. The victim said the defendant had slapped him, and the victim threatened to hit the defendant with a skillet. The defendant spent the night of April 20–21 at the victim's residence, and the victim took him to school on the morning of April 21.
>
> On the evening of April 21, Jones was visiting with the victim in his house when the defendant arrived in the company of three other boys. At one point, the defendant playfully wrestled with the victim, who was wearing a "moo-moo" style dress and was seated in the living room floor. Jones testified that the defendant then went to the back of the house, returned to the living room with a shotgun, and ordered everyone to leave "because they was fixing to make love." The victim, who was not taking the defendant seriously, told him to stop acting the fool and to put away the shotgun. At some point, the defendant said he would "bust[ ] [the victim's] head to the fat." However, the defendant put away the shotgun, and he and his three companions left.
>
> A few minutes later, the victim's phone rang, and Jones answered to find the defendant on the line. The defendant said he wanted to speak to the victim and that

he was "going to kill that bitch." She gave the phone to the victim, who conversed with the defendant. Approximately fifteen minutes later, the defendant and his three companions returned to the victim's house. Jones was still present and quoted the defendant as saying, "How much you bet I won't kill that g-d_____ bitch?" The defendant then told Jones that if she didn't want to see what happened she had better leave. When the defendant pulled a .22 pistol out of his jogging pants, Jones retreated to her apartment next door. Ten seconds later, as she reached her steps, she heard a shot. As she stepped inside the door, she heard four or five more shots. She heard footsteps on the gravel outside and looked out to see the defendant and two of the boys running along the driveway. A neighbor who was outdoors a few houses away testified that he heard shots and then saw five or six young men run to a dark car and drive away.

Jones called the police, who arrived and found the victim's eyeglasses on the porch and his slippers between the storm door and the closed, wooden front door of the house. There were bullet holes in the door frame that indicated that bullets had struck the frame from the outside of the house. Inside, they found the victim in the floor, clutching the telephone, dead from a .22 bullet wound to the heart.

The theory of the defense was posited by the testimony of the defendant and two of the other young men, Vernon Grigsby and Jeffrey Pinchon, who visited the victim's home that night. Although their stories conflicted in several respects, Grigsby, Jeffrey Pinchon,[3] and the defendant testified that they and Josh Graham went in Graham's car to the victim's house twice on the evening of April 21, because the defendant wanted to get his clothes. During the first visit, the defendant playfully wrestled with the victim and procured the shotgun; however, they denied that the defendant made the love-making comment and denied that he threatened the victim in any way. The defendant retrieved a couple of items of clothing, and they left. In an hour or two, after the defendant decided that he wanted the rest of his clothes, they returned. The defendant put his clothes in a bag, and the defendant, Jeffrey Pinchon, and Grigsby went down the driveway and left Josh Graham behind. The defendant and Jeffrey Pinchon said that they raced to Graham's car in order to claim the front seat. Grigsby testified that Graham and the victim were having words on the victim's porch. The trio heard shots. Grigsby saw the victim falling through the front door and the door closing. They testified that Graham, with .22 pistol in hand, fled to the car.

All four got into the car, and Graham drove away. Grigsby testified that Graham threatened "to hurt us if we said anything." Jeffrey Pinchon testified that no one

---

[3] "Jeffrey Pinchon is the defendant's cousin." *State v. Pinchon*, 2000 WL 284071, at *2 n.1.

mentioned the shooting. Graham let the three boys out and left.[4] None of the boys called the police.

On July 31 or August 1, 1998, the defendant was arrested. On April 15, 1999, Josh Graham was murdered. The parties entered a stipulation of fact which indicated that a person had been charged with Graham's murder, that the case was apparently unrelated to the case on trial, and that the defendant had given the state notice of its defense that Graham was the perpetrator sometime in the weeks before Graham was killed.

*State v. Pinchon*, 2000 WL 284071, at *1–3 (first three alterations in original).

### B. Procedural History

#### 1. Trial and Direct Appeal

In September 1999, a Davidson County Criminal Court jury found Pinchon guilty of premeditated first-degree murder. *See id.* at *1; Tenn. Code Ann. § 39-13-202(a)(1) (1997). Pinchon was sentenced to imprisonment for life. *State v. Pinchon*, 2000 WL 284071, at *1; Tenn. Code Ann. § 39-13-202(c)(3) (1997). He filed a direct appeal, arguing that there was insufficient evidence to support his conviction and that one of the jury instructions violated his due process rights. *State v. Pinchon*, 2000 WL 284071, at *1, *4; *see also Pinchon v. Myers*, 615 F.3d at 637. The TCCA rejected those arguments and affirmed Pinchon's conviction and sentence. *State v. Pinchon*, 2000 WL 284071, at *5; *Pinchon v. Myers*, 615 F.3d at 637.

#### 2. Previous Post-Conviction Proceedings

Pinchon has filed several petitions for post-conviction relief in state and federal court. On January 3, 2002, Pinchon filed a pro se petition for post-conviction relief in the Davidson County Criminal Court. *See Pinchon v. State*, No. M2003-00816-CCA-R3-PC, 2004 WL 193055, at *1 (Tenn. Crim. App. Jan. 28, 2004), *perm. app. denied*, (Tenn. May 10, 2004). After appointing

---

[4] "The testimony of defense witnesses conflicted as to where Graham let them out of the car." *State v. Pinchon*, 2000 WL 284071, at *2 n.2.

counsel for Pinchon and holding a hearing, the court granted the State's motion to dismiss Pinchon's petition as untimely. *Id.* at *1–2. The TCCA affirmed on appeal, and the Tennessee Supreme Court denied Pinchon's application for review. *Id.* at *5.

Before filing his petition for post-conviction relief in state court, Pinchon filed a pro se petition for a writ of habeas corpus in this Court on March 8, 2001, asserting the same two claims he raised on direct appeal. *See Pinchon v. Myers*, 615 F.3d at 637. This Court held Pinchon's petition in abeyance until he exhausted his state-court post-conviction remedies. *Id.* at 638. After the Tennessee Supreme Court denied Pinchon's application for review in those proceedings, this Court reopened Pinchon's federal habeas petition and, ultimately, granted the State's motion for summary judgment. *Id.* The Court found "that there was sufficient evidence to support Pinchon's conviction, that any error regarding the jury instructions at trial was harmless, and that Pinchon's ineffective-assistance-of-counsel claims [which he sought to add to his petition] were both untimely and procedurally defaulted." *Id.* The Sixth Circuit Court of Appeals affirmed, *id.* at 644, and the Supreme Court denied certiorari, *Pinchon v. Myers*, 563 U.S. 962 (2011).

In 2012, Pinchon filed a second habeas petition in this Court asserting ineffective-assistance-of-counsel claims. *See In re Pinchon*, No. 17-5104, 2017 WL 11037420, at *1 (6th Cir. Aug. 18, 2017). The Court transferred the petition to the Sixth Circuit for consideration as a motion for authorization to file a second or successive habeas petition, and the Sixth Circuit denied the motion. *See id.* (citing *In re Pinchon*, No. 13-5240 (6th Cir. Sept. 26, 2013)).

### 3. Post-Conviction Proceedings After *Miller* and *Montgomery*

In 2012, the Supreme Court held in *Miller* "that mandatory [sentences of] life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465; *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016) (holding that *Miller* "rendered life without parole an

unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth" (citation omitted)). On January 25, 2016, the Supreme Court held in *Montgomery* that its holding in *Miller* applied retroactively on collateral review to juvenile offenders whose convictions and sentences were final before it decided *Miller*. 136 S. Ct. at 732–37.

On February 24, 2016, Pinchon filed a pro se motion to reopen his post-conviction proceedings in Davidson County Criminal Court, arguing that his sentence is unconstitutional under *Miller*. (Doc. No. 27-1.) The court denied Pinchon's motion, finding that his "sentence does not violate the rule established in Miller and Montgomery" because Pinchon "received a sentence under which he is eligible for release." (*Id.* at PageID# 195.) Specifically, the court found that,

> [i]n Tennessee, a defendant convicted of first degree murder is subject to three possible sentences: (1) death; (2) life without the possibility of parole; or (3) life. See Tenn. Code Ann. § 39-13-202(c). When a defendant receives a life sentence in Tennessee, no parole is involved. The defendant serves a specific number of years, and then is eligible for release with no parole supervision. See Tenn. Code Ann. § 40-35-501(h)(1), (i)(1), (i)(2)(a). The Court notes that on the surface, it may appear that this sentencing scheme violates the rule provided in Miller because it does not provide for release on "parole." However, the Tennessee Court of Criminal Appeals has held that a life sentence in Tennessee does not run afoul of Miller because the eligibility for early release through sentence reduction credits serves the same purpose as eligibility for parole—to provide a defendant with the possibility of obtaining release on the basis of rehabilitation. See Lowe-Kelley v. State, 2016 WL 742180, at *8–9 (Tenn. Crim. App., Feb. 24, 2016) (holding that juvenile offender's sentence of two consecutive life sentences was in compliance with Miller because the defendant . . . retained the possibility of release); see also Tenn. Code Ann. §[ ]40-35-501(i)(1), § 41-21-236. Thus, because [Pinchon] was sentenced to life and retains the possibility of release, [Pinchon's] sentence is not a violation of the constitutional right provided in Miller.

(*Id.*) The TCCA denied Pinchon's application for permission to appeal this ruling and explained its reasoning as follows:

> [Pinchon] was convicted of first-degree murder and sentenced to life in prison. *State v. Edward Pinchon*, No. Ml999-00994-CCA-R3-CD, 2000 WL 284071 (Tenn. Crim. App., Mar. 17, 2000). He was seventeen when he committed the crime. [Pinchon] now argues that the United States Supreme Court's opinion in

7
Case 3:16-cv-03031   Document 41   Filed 09/03/20   Page 7 of 19 PageID #: 388

> *Miller v. Alabama*, -- U.S. --, 132 S. Ct. 2455 (2012), must be applied retroactively to his case. It is clear that *Miller*'s prohibition on mandatory life-without-parole sentences for juvenile offenders is a new substantive rule requiring retroactive application to cases on state collateral review. *See Montgomery v. Alabama*, -- U.S. --, 136 S. Ct. 718 (2016). [Pinchon], however, was not sentenced to life without the possibility of parole; he was sentenced to life. The trial court found that *Miller* is inapplicable to [Pinchon's] case. In *Miller*, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. at 2469. [Pinchon], a juvenile at the time of the crime, did not receive a mandatory life without the possibility of parole sentence for the first degree murder conviction. He was sentenced to life. Tenn. Code Ann. § 39-13-202(c) (sentences for first degree murder include death, life without the possibility of parole and life). Although the statute does not refer to a sentence of life as one *with the possibility of parole*, a defendant sentenced to life for a first degree murder conviction occurring after July 1, 1995, is *eligible for release* after serving at least fifty-one years. Tenn. Code Ann. § 40-35-501 (i)(1). "To be clear, although it may appear otherwise, [Pinchon] received a sentence to which he is eligible for release." *Lowe-Kelley v. State*, No. M2015-00138-CCA-R3-PC, 2016 WL 742180 at *8 (Tenn. Crim. App. Feb. 24, 2016) (application for permission to appeal pending).
>
> Having reviewed [Pinchon's] application in light of the trial court's order, this Court concludes that the trial court did not abuse its discretion in denying the motion to reopen. [Pinchon] . . . received a sentence of life, which carries the possibility of release, albeit after fifty-one years. He did not receive a mandatory sentence of life without the possibility of parole, as contemplated by *Miller*. "While the next logical step may be to extend protection to these types of sentences, that is not the precedent which now exists. We are not compelled to grant the [Pinchon's] request to expand the meaning of the *Miller* holding." *Perry v. State*, No. W2013-00901-CCA-R3-PC, 2014 WL 1377579 at *5 (Tenn. Crim. App., Apr. 7, 2014), *perm to app. denied*, (Tenn., Sep. 18, 2014).

(*Id.* at PageID# 250.)

The Tennessee Supreme Court denied Pinchon's application for permission to appeal the TCCA's ruling. (Doc. No. 27-7.)

Pinchon initiated this action on November 23, 2016, by filing a pro se petition under 28 U.S.C. § 2254 asserting that his sentence is unconstitutional under *Miller*. (Doc. No. 1.) This Court appointed counsel for Pinchon (Doc. No. 9) and stayed the action while Pinchon sought authorization from the Sixth Circuit to litigate a second or successive habeas petition (Doc. No. 20). The Sixth Circuit granted Pinchon's motion for authorization on August 18, 2017 (Doc.

No. 22-1), and this Court lifted the stay and granted Pinchon's request to file an amended petition restating his claims with the assistance of counsel (Doc. No. 23).

Pinchon's amended petition argues that his mandatory life sentence violates *Miller* because he will never be eligible for parole and must serve between fifty-one and sixty years before release becomes possible, which exceeds his life expectancy and therefore "den[ies] him a reasonable hope of living 'some years' outside of prison." (Doc. No. 25, PageID# 97 (quoting *Montgomery*, 136 S. Ct. at 737).) The amended petition does not argue that the TCCA failed to adjudicate Pinchon's *Miller* claim on the merits.[5] Instead, Pinchon argues that he is entitled to relief from the TCCA's order under 28 U.S.C. § 2254(d) because the TCCA made an unreasonable determination of fact and unreasonably applied *Miller* and *Montgomery*. (Doc. No. 25.) Washburn answered the amended petition, conceding that Pinchon exhausted his state-court remedies and that the petition and amended petition are timely,[6] but arguing that Pinchon is not entitled to relief under 28 U.S.C. § 2254(d). (Doc. No. 28.) Pinchon filed a reply (Doc. No. 29) and, at the Court's request (Doc. No. 36), both parties filed supplemental briefs addressing the Sixth Circuit's interim holding in *Atkins v. Crowell*, 945 F.3d 476 (6th Cir. 2019), *cert. denied*, --- S. Ct. ---, 2020 WL 2515778, at *1 (May 18, 2020) (Doc. Nos. 38, 39). Washburn filed a response to Pinchon's supplemental brief. (Doc. No. 40.) This matter is now ripe for the Court's review.

---

[5] In the amended petition, Pinchon concedes that he "must show that the Tennessee Court of Criminal Appeals (TCCA), when denying him relief in post-conviction proceedings, issued a decision 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' or issued a decision that 'was contrary to, or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States[.]'" (Doc. No. 25, PageID# 98 (alteration in original) (quoting 28 U.S.C. § 2254(d)(1)–(2)).)

[6] Washburn retracted this concession in later briefing. *See* discussion *infra* Section III.A.

## II. Legal Standard

Pinchon's amended petition is governed by 28 U.S.C. § 2254(d), as amended by AEDPA. The statute provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Supreme Court has repeatedly held "that AEDPA, by setting forth [these] necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

Under § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law only "if the state court applies a rule different from the governing law set forth" in the Supreme Court's holdings "or if it decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court's "decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case[.]" *White v. Woodall*, 572 U.S. 415, 426 (2014). Notably, to be actionable under § 2254(d)(1), a state court's unreasonable application of Supreme Court precedent "'must be objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodall*, 572 U.S. at 419); *see also Williams*, 529 U.S. at 411 ("[A] federal habeas court

may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). Instead, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under § 2254(d)(2), habeas relief is available if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). However, the statute provides that a state court's factual determinations "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1); *see also Davis v. Ayala*, 576 U.S. 257, 271 (2015) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006))).

AEDPA thus "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011)). The Supreme Court has held that the AEDPA standard is difficult to meet "because it was meant to be." *Harrington*, 562 U.S. at 102; *see also Burt*, 571 U.S. at 20; *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The statute enforces the principle "that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting

*Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)); *see also Woods*, 575 U.S. at 316.

**III.    Analysis**

    **A.    Timeliness of Pinchon's Amended Petition**

Respondent Washburn's supplemental brief argues, for the first time, that Pinchon's amended petition is time-barred because the applicable statute of limitations is one year and Pinchon did not file his original petition in this action until more than a year after the Supreme Court's decision in *Miller*. (Doc. No. 39.) Washburn "acknowledge[s] that he initially stated in his answer that the petition and amended petition were timely filed." (*Id.* at PageID# 369.) Nevertheless, he argues that the Court may sua sponte dismiss Pinchon's amended petition with prejudice on timeliness grounds. (Doc. No. 39.)

"Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Day v. McDonough*, 547 U.S. 198, 202 (2006). However, Washburn is correct that district courts have some discretion to raise the issue of timeliness on their own initiative in habeas actions. The Supreme Court has held that, in the absence of "a State's deliberate waiver of a limitations defense[,]" "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Id.* at 202, 209. In light of Washburn's acknowledged waiver, and considering the late stage of these proceedings, the Court declines Washburn's invitation to consider the timeliness of Pinchon's amended petition sua sponte in this case. The Court will consider the merits of Pinchon's amended petition.

    **B.    Whether the TCCA Made an Unreasonable Determination of Fact**

Pinchon argues that relief is available to him under 28 U.S.C. § 2254(d)(2) because the TCCA made an unreasonable determination of fact in describing his sentence. (Doc. No. 25.)

Specifically, Pinchon points to the TCCA's holding that, "[a]lthough the [sentencing] statute does not refer to a sentence of life as one *with the possibility of parole*, a defendant sentenced to life for a first degree murder conviction occurring after July 1, 1995, is *eligible for release* after serving at least fifty-one years." (Doc. No. 27-1, PageID# 250.) Pinchon argues that, "[t]hrough th[is] emphasis, the TCCA indicated that it believes that Pinchon will have the possibility of something that is the functional equivalent of parole. . . . But, as a matter of fact, Pinchon is not eligible for parole or for any functional equivalent." (Doc. No. 25, PageID# 98–99.) In other words, Pinchon argues, the TCCA "rested [its] decision on an erroneous premise by presuming that a 'life' sentence is essentially the same thing as a sentence of 'life with the possibility of parole.'" (*Id.* at PageID# 99.)

AEDPA requires district courts to presume that a state court's factual findings are correct, subject to rebuttal by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court finds that Pinchon has not presented sufficiently clear and convincing evidence to rebut that presumption in this case. The TCCA did not erroneously find that Pinchon will be eligible for parole. It correctly found that Pinchon "was sentenced to life . . . [under] Tenn. Code Ann. § 39-13-202(c)" and will be "eligible for release after serving at least fifty-one years . . . [as provided by] Tenn. Code Ann. § 40-35-501(i)(1)." (Doc. No. 27-1, PageID# 250.) The TCCA cited Tenn. Code Ann. § 40-35-501, which, in its current form, provides that a person convicted of first-degree murder after July 1, 1995, and sentenced to life imprisonment is not eligible for parole and "shall serve one hundred percent (100%) of sixty (60) years less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other law, shall operate to reduce the sentence

imposed by the court by more than fifteen percent (15%)."[7] Tenn. Code Ann. § 40-35-501(h)(2). The TCCA also cited its opinion in *Lowe-Kelley v. State*, No. M2015–00138–CCA–R3–PC, 2016 WL 742180, at *8 (Tenn. Crim. App. Feb. 24, 2016), in which it held that, "[w]hen a defendant [convicted of first-degree murder] currently receives a life sentence in Tennessee, no parole is involved. He serves a specific number of years, and then he is released with no parole supervision." Pinchon therefore has not carried his burden to show by clear and convincing evidence that the TCCA erroneously found that he is eligible for parole. He also has not shown by clear and convincing evidence that the TCCA's finding that Pinchon will be eligible for release after serving at least fifty-one years is factually incorrect.

Pinchon's true disagreement is with the TCCA's implied conclusion that eligibility for release after serving fifty-one years is the functional equivalent of being eligible for parole. (Doc. No. 25.) But that is, at heart, a legal conclusion as to whether the Supreme Court's holding in *Miller* applies to de facto life without parole sentences like Pinchon's. The Court finds that Pinchon's challenge is better construed as an argument under § 2254(d)(1) that the TCCA's decision is (1) contrary to *Miller* because the facts regarding Pinchon's sentence are materially indistinguishable from the sentence declared unconstitutional in *Miller*; or (2) an unreasonable application of *Miller* because there is no possibility for fairminded disagreement that the rule announced in *Miller* applies to Pinchon's sentence. As explained below, the Sixth Circuit has addressed these arguments directly.

---

[7] "Fifteen percent of sixty years is nine years, thus resulting in service of a minimum fifty-one-years. As such, a defendant who commits a first-degree murder on or after July 1, 1995, may be released, at the earliest, after service of fifty-one years." *Brown v. Jordan*, 563 S.W.3d 196, 200–01 (Tenn. 2018).

## C. Whether the TCCA's Decision Was Contrary to or Involved an Unreasonable Application of *Miller*

Pinchon's argument, under 28 U.S.C. § 2254(d)(1), that the TCCA's decision was contrary to or an unreasonable application of *Miller* is foreclosed by the Sixth Circuit's decision in *Atkins*. The *Atkins* Court considered a sentence identical to Pinchon's, life imprisonment for first-degree murder with the possibility of release after serving at least fifty-one years, and held that AEDPA barred the petitioner's habeas claim because "the state court's holding—that a chance for release after 51 years removes Atkins's sentence from *Miller*'s orbit—was neither 'contrary to' nor an 'unreasonable application' of *Miller*." 945 F.3d at 478 (quoting 28 U.S.C. § 2254(d)(1)). The *Atkins* Court explained its reasoning as follows:

> A state court's decision is "contrary to" a Supreme Court holding only if "the state court applies a rule different from the governing law set forth in" the Supreme Court's decision, "or if it decides a case differently than [the] Court has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). The state court did nothing of the sort here. Whether read broadly or narrowly, *Miller* creates a legal rule about life-without-parole sentences. And, whether one looks at Atkins's sentence formally or functionally, he did *not* receive a life-without-parole sentence. He will be eligible for release after at least 51 years' imprisonment. *See Brown* [*v. Jordan*], 563 S.W.3d [196,] 197 [(Tenn. 2018)]. *Miller*'s holding simply does not cover a lengthy term of imprisonment that falls short of life without parole. *See Starks v. Easterling*, 659 F. App'x 277, 280–81 (6th Cir. 2016); *cf. Bunch v. Smith*, 685 F.3d 546, 551 (6th Cir. 2012). Similarly, the facts of Atkins's case (the possibility of release after 51 years' imprisonment) materially distinguish it from the facts of *Miller* (no possibility of release). *Cf. Lockyer v. Andrade*, 538 U.S. 63, 74 & n.1 (2003).
>
> Nor was the state court's decision an "unreasonable application" of *Miller*. A state decision cannot have unreasonably *applied* a Supreme Court precedent if a habeas petitioner needs a federal court "to *extend* that precedent" to obtain relief. *Woodall*, 572 U.S. at 426. Atkins needs that type of extension here. He asks us to expand *Miller*'s holding to cover life sentences that include a lengthy prison term before any potential release. "'Perhaps the logical next step from'" *Miller* would be to hold that a life sentence without any chance of parole for 51 years "does not satisfy the Eighth Amendment, but 'perhaps not.'" *Virginia v. LeBlanc*, —— U.S. ——, 137 S. Ct. 1726, 1729 (2017) (per curiam) (citation omitted). After all, *Miller* reasoned that life-without-parole sentences are unique, noting that they "share some characteristics with death sentences that are shared by no other sentences." *Miller*,

15

> 567 U.S. at 474 (quoting *Graham v. Florida*, 560 U.S. 48, 69 (2010)). The portion of *Miller* tailored to life-without-parole sentences shows that there is at least a "reasonable argument" that it applies only to those types of sentences. *Demirdjian v. Gipson*, 832 F.3d 1060, 1076 (9th Cir. 2016). That reasonable argument forecloses any claim that the state court acted unreasonably under § 2254(d)(1).

*Id.* at 478–79 (first alteration in original).

This Court is bound by the Sixth Circuit's holding in *Atkins* that AEDPA bars claims for habeas relief based on the TCCA's refusal to apply *Miller* to a life-imprisonment sentence that provides for release after serving at least fifty-one years. As Chief Judge Cole observed in his concurrence in *Atkins*, "[o]n occasion, AEDPA's onerous standards require us to deny a habeas petitioner's application for relief even though the sentence he received is unconstitutional. This outcome is most troubling in cases . . . where Supreme Court precedent—when properly applied—compels the conclusion that the state violated the petitioner's constitutional rights." *Id.* at 480 (Cole, C.J., concurring).

This Court agrees that "one need not search for elephants in mouseholes" "to reach the conclusion that the Supreme Court has already opined that sentencing courts may not impose a term-of-years sentence on a juvenile that exceeds the juvenile's life expectancy[.]" *Id.* at 481 (Cole, C.J., concurring). "One need only recognize that the Court has spoken with clarity on a simple yet profound moral principle: *it defies decency to sentence a child to die in prison without considering the fact that he is a child.*" *Id.* (emphasis added); *see also Starks v. Easterling*, 659 F. App'x 277, 281 (6th Cir. 2016) (White, J., concurring) (concluding that, "properly applied, the Supreme Court's cases establish that" petitioner's sentence of life imprisonment with the possibility of release after serving between fifty-one and sixty years "violates the Eighth Amendment" even though AEDPA barred relief). As the Sixth Circuit recognized in these cases, however, because "Congress has tied our hands when it comes to [his] sentence," *Atkins*, 945 F.3d at 480 (Cole, C.J.,

concurring), this Court cannot grant Pinchon relief on the ground that the TCCA's decision was contrary to or an unreasonable application of *Miller*.

### D. Whether the TCCA's Decision Was Contrary to or Involved an Unreasonable Application of *Montgomery*

Finally, Pinchon argues that habeas relief is available under 28 U.S.C. § 2254(d)(1) because the TCCA's decision was contrary to or an unreasonable application of *Montgomery*. (Doc. Nos. 25, 29.) Specifically, Pinchon argues that: (1) "*Montgomery* holds that '[i]f a state collateral proceeding is open to a claim controlled by federal law, the state court has a duty to grant the relief that federal law requires[;]'" (2) "[t]hat 'duty' requires the State to grant relief whenever there is constitutional error, not only when the error is unreasonable[;]" and (3) "[t]he TCCA shirked that duty by saying it would only grant relief if existing precedent 'compelled' that conclusion – viz., if it would be unreasonable to fail to reach that conclusion." (Doc. No. 25, PageID# 101–02 (first alteration in original) (quoting *Montgomery*, 136 S. Ct. at 731).) Put another way, Pinchon argues that the TCCA's decision is contrary to or an unreasonable application of Supreme Court precedent because the TCCA "misunderstood its obligation to rectify constitutional violations, thinking it should or could do so only if compelled by precedent." (Doc. No. 38, PageID# 365; *see also* Doc. No. 29, PageID# 343 (arguing that the TCCA "failed to freely apply *Miller* even though it was required to do so by the Supreme Court's holding in *Montgomery* . . .").)

Even assuming that Pinchon's expansive reading of *Montgomery* is correct, he has not shown that the TCCA's decision was contrary to or an unreasonable application of *Montgomery* as required to obtain relief under AEDPA. The TCCA cited *Montgomery* only for the principle "that *Miller*'s prohibition on mandatory life-without-parole sentences for juvenile offenders is a new substantive rule requiring retroactive application to cases on state collateral review." (Doc. No. 27-1, PageID# 250.) It then found that Pinchon "did not receive a mandatory sentence of life

17
Case 3:16-cv-03031   Document 41   Filed 09/03/20   Page 17 of 19 PageID #: 398

without the possibility of parole, as contemplated by *Miller*[,]" and cited its own holding in *Perry* for the principle that it was "'not compelled to grant [Pinchon's] request to expand the meaning of the *Miller* holding.'" (*Id.* (quoting *Perry*, 2014 WL 1377579, at *5).)

Pinchon has failed to show that habeas relief is available to him under AEDPA's "contrary to" prong because he argues only that the TCCA "misunderstood" *Montgomery* (Doc. No. 38, PageID# 365), not that it "applie[d] a rule different from the governing law set forth" in *Montgomery* or "decide[d] a case differently" than the Supreme Court has "on a set of materially indistinguishable facts[,]" *Bell*, 535 U.S. at 694. Nor has Pinchon carried his burden to show that the TCCA's application of *Montgomery* was "objectively unreasonable[,]" *Woods*, 575 U.S. at 316, and "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *Harrington*, 562 U.S. at 103. The TCCA correctly held that *Montgomery* requires state courts to apply *Miller* on collateral review of sentences that were finalized before *Miller* was decided. (Doc. No. 27-1.)

Pinchon argues that *Montgomery*'s holding was much broader and that the TCCA committed "plain legal error" when it decided "to limit its role to correcting constitutional errors when they are unreasonable, rather than whenever such an error exists[,]" but that argument cannot succeed for two reasons. (Doc. No. 25, PageID# 101.) First, the Supreme Court has instructed that "'even clear error will not suffice'" to show an unreasonable application of federal law under AEDPA. *Woods*, 575 U.S. at 316 (quoting *Woodall*, 572 U.S. at 419). Second, the TCCA relied on *Perry*, and not *Montgomery*, in holding that it was not compelled to grant Pinchon relief under *Miller*. (Doc. No. 27-1.) Its holding accords with the Supreme Court's holding in *Woodall* that "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal

18
Case 3:16-cv-03031 Document 41 Filed 09/03/20 Page 18 of 19 PageID #: 399

courts to treat the failure to do so as error." 572 U.S. at 426. There is no indication that *Montgomery*, which does not mention *Woodall*, altered the Supreme Court's precedent on this point "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. On the contrary, the *Atkins* Court relied on *Woodall* in holding that the TCCA did not unreasonably apply *Miller* because "[a] state decision cannot have unreasonably *applied* a Supreme Court precedent if a habeas petitioner needs a federal court 'to *extend* that precedent' to obtain relief." 945 F.3d at 479 (quoting *Woodall*, 572 U.S. at 426); *see also id.* at 478 (noting that the Supreme Court may "soon decide whether *Montgomery* expanded *Miller*'s holding (and whether any such expansion can be applied retroactively)"). Pinchon therefore has not satisfied AEDPA's "unreasonable application" prong.

## IV.     Recommendation

For these reasons, AEDPA bars this Court from granting Pinchon the relief he seeks, and the Magistrate Judge therefore RECOMMENDS that Pinchon's amended petition for a writ of habeas corpus (Doc. No. 25) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 3rd day of September, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge