UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EDWARD PINCHON,

     Petitioner,

v.

RUSSELL WASHBURN,

     Respondent.

Case No. 3:16-cv-03031
Honorable Laurie J. Michelson
Magistrate Judge Alistair E. Newbern

---

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[41] AND DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS
[25]**

---

In 1998, a Tennessee jury found Edward Pinchon guilty of murder. Pinchon was only 17 years old when the murder took place. Without accounting for how the mitigating qualities of Pinchon's youth might affect his prison term, Pinchon was sentenced to "imprisonment for life." Under Tennessee law, "imprisonment for life" is, at a minimum, 51 years in prison. Thus, Pinchon's earliest release will come at age 68. Worst case, he will be 77 before he is released.

Over a decade after Pinchon's conviction, the Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012). There, the Supreme Court held that the Eighth Amendment prohibits automatically sentencing juvenile offenders—even murderers—to life in prison without the possibility of parole. *Id.* at 465. "Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences," the Court explained. *Id.* at 477. "It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or

dysfunctional." *Id.* "It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him." *Id.* And mandatory life without parole "disregards the possibility of rehabilitation even when the circumstances most suggest it." *Id.*

Based on *Miller*, Pinchon asked the Tennessee courts to grant him relief. The Tennessee Court of Criminal Appeals reasoned that *Miller* prohibited mandatory life-without-parole sentences for juvenile offenders and while Pinchon was a juvenile offender, his sentence was not life without parole. So the Tennessee Court of Criminal Appeals denied Pinchon's *Miller* claim.

Pinchon then turned to federal court, seeking a writ of habeas corpus. This Court referred all pretrial matters to Magistrate Judge Alistair E. Newbern. Although there are strong arguments that *Miller*'s holding extends to Pinchon's lengthy sentence, 28 U.S.C. § 2254(d) greatly restricts a federal court's ability to second guess state court decisions. Magistrate Judge Newbern recognized this, and in a thorough and well-reasoned report, she recommends that Pinchon's petition be denied under § 2254(d).

Both Pinchon and Warden Russell Washburn have filed objections to the Magistrate Judge's report and recommendation. For the reasons that follow, the Court will overrule these objections and adopt the Magistrate Judge's report.

## I.

### A.

Pinchon faced challenges growing up. He came from a poor family and school records indicate that his home was "extremely inadequate." (*See* Doc. 25, PageID.88.) Pinchon attended a special-needs school and his formal education ended in the 10th grade. *Pinchon v.*

2

*State*, No. M2003-00816-CCA-R3PC, 2004 WL 193055, at *1 (Tenn. Crim. App. Jan. 28, 2004). And according to one psychological examiner, Pinchon's IQ was (and is) in the upper 60s, which corresponds to mild mental retardation. *Id.* at *2.

When Pinchon was 17 years old, he somehow got involved in a sexual relationship with a man in his 40s, Leslie Handy. *State v. Pinchon*, No. M1999-00994-CCA-R3CD, 2000 WL 284071, at *1 (Tenn. Crim. App. Mar. 17, 2000). Handy occasionally bought clothes for Pinchon, and Pinchon would stay at Handy's place about five nights a week. *Id.* Although it is not clear how much of this evidence was presented at trial, Pinchon says that Handy took advantage of his "many vulnerabilities, i.e., youth, poverty, and intellectual disability" and "essentially paid Pinchon for sex by buying him clothes and giving him food and a place to sleep." (Doc. 25, PageID.88.)

On April 21, 1997, Handy was killed. That day, Pinchon and three other boys arrived at Handy's place. *Pinchon*, 2000 WL 284071, at *1. According to a neighbor who was over at Handy's at the time, after Pinchon and Handy wrestled playfully, Pinchon went and retrieved a shotgun. *Id.* Handy told Pinchon to stop acting foolish, and Pinchon said he would "bust [Handy's] head to the fat." *Id.* But ultimately, Pinchon put the shotgun away and he and the three other boys left. *Id.* A few minutes later, Handy's phone rang and the neighbor who was still over at Handy's answered. *Id.* Pinchon was on the line. *Id.* He told the neighbor that he wanted to speak to Handy and that he was "going to kill that bitch." *Id.* About 15 minutes later, Pinchon and his three companions returned to Handy's; the neighbor was still there, and, according to her, Pinchon said, "How much you bet I won't kill that g-d_____ bitch?" *Id.* Pinchon pulled out a .22 pistol, which prompted the neighbor to leave. *Id.* About 10 seconds later, she heard a gunshot; shortly after that, she heard more gunshots. *Id.* Pinchon and two of

3

the companions would later say that the fourth person with them, Josh Graham, argued with Handy and that they saw Graham run to the car with the .22 pistol. *Id.* at *2.

Over a year after Handy's death, the State of Tennessee arrested Pinchon. *Pinchon*, 2000 WL 284071, at *3. At trial, the neighbor testified as described above, and Pinchon and two of the companions implicated Graham. *Id.* at *2. It appears that Graham did not testify because he had since been murdered. *Id.* at *2. In September 1998, a Tennessee jury convicted Pinchon of first-degree murder. (Doc. 27-2, PageID.279.)

Pinchon was sentenced to "imprisonment for life." Under Tennessee law, a person convicted of first-degree murder can receive one of three sentences: death, life in prison without the possibility of parole, and imprisonment for life. Tenn. Code 39-13-202(b) (1997). Because Pinchon was a juvenile at the time of Handy's death, he was not eligible for the death penalty. Tenn. Code § 37-1-134(a)(1) (1997). And the State of Tennessee did not seek life in prison without the possibility of parole. *Pinchon*, 2000 WL 284071, at *4. So, by default, Pinchon was sentenced to "imprisonment for life," which is sometimes more simply referred to as "life." As such, the mitigating qualities of Pinchon's youth were not factored into his sentence. And while it may not have been completely settled at the time, it is now clear that a Tennessee life sentence is 60 years in prison, with the possibility of credits reducing the time to 51 years. *See Brown v. Jordan*, 563 S.W.3d 196, 200–01 (Tenn. 2018); *see also Vaughn v. State*, 202 S.W.3d 106, 118–19 (Tenn. 2006) (discussing amendments to "life" statute). Thus, at the earliest, Pinchon will be released when he is 68 years old; at the latest, he will be released when he is 77.

In the years that followed, Pinchon made several attempts to challenge his conviction. He appealed without success. *See Pinchon v. State*, No. M2003-00816-CCA-R3PC, 2004 WL

4

193055, at *1 (Tenn. Crim. App. Jan. 28, 2004) (summarizing direct appeal). And he sought post-conviction relief in state court without success. *See Pinchon v. Myers*, 615 F.3d 631, 637–38 (6th Cir. 2010) (summarizing procedural history). He also filed two petitions for a writ of habeas corpus in federal court, also without success. *See id.*

**B.**

Over a decade after Pinchon was sentenced, a pair of Supreme Court cases opened the door for Pinchon to challenge his sentence. In 2012, the U.S. Supreme Court decided *Miller v. Alabama*. There, the Court "h[e]ld that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. 460, 465 (2012). Part of the rationale for this holding was that sentencing a juvenile to die in prison is a determination that the juvenile cannot change; "but," the Supreme Court explained, "incorrigibility is inconsistent with youth." *Id.* at 473; *see also id.* at 471 (explaining that "juveniles have diminished culpability and greater prospects for reform" than adults). And in 2016, the U.S. Supreme Court decided *Montgomery v. Louisiana*. There, the Court held that *Miller*'s holding applied retroactively, i.e., it applied to criminal sentences that were already final at the time *Miller* was decided. 136 S. Ct. 718, 725, 736 (2016).

Shortly after *Montgomery* was decided, Pinchon sought to reopen his state post-conviction proceedings. In denying Pinchon's motion, the state trial court stated, "because [Pinchon] was sentenced to life and retains the possibility of release, [his] sentence is not a violation of the constitutional right provided in *Miller*." (Doc. 27-1, PageID.195.)

Pinchon then turned to the Tennessee Court of Criminal Appeals. Precisely what that court said is critical here, so it is worthwhile to quote liberally from the Tennessee court's

5

opinion. (Doc. 27-1, PageID.249–250.) Acknowledging *Montgomery*, the court stated, "It is clear that *Miller*'s prohibition on mandatory life-without-parole sentences for juvenile offenders is a new substantive rule requiring retroactive application to cases on state collateral review." (*Id.* at PageID.250.) But, said the court, Pinchon "was not sentenced to life without the possibility of parole; he was sentenced to life." (*Id.*) And, the Tennessee appellate court explained, a sentence of life "carries the possibility of release, albeit after fifty-one years." (*Id.*) "[Pinchon] did not receive a mandatory sentence of life without the possibility of parole, as contemplated by *Miller*," the court added. (*Id.*) And quoting one of its earlier decisions, the Tennessee Court of Criminal Appeals then concluded, "While the next logical step may be to extend protection to these types of sentences, that is not the precedent which now exists. We are not compelled to grant [Pinchon's] request to expand the meaning of the *Miller* holding." (*Id.* (quoting *Perry v. State*, No. W2013-00901-CCA-R3PC, 2014 WL 1377579, at *5 (Tenn. Crim. App. Apr. 7, 2014)).)

## C.

Pinchon then proceeded to federal court, again petitioning for a writ of habeas corpus. Because this was Pinchon's third application for the writ, Pinchon needed to "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A).

In authorizing Pinchon to file a successive petition, the Sixth Circuit explained, "The 'central intuition' and mandate of *Miller* and *Montgomery* is that sentencing courts must consider a 'juvenile's special circumstances' because 'children who commit even heinous crimes are capable of change' and, in all but the most extreme circumstances, are required to have 'hope for some years of life outside prison walls.'" *In re Pinchon*, No. 17-5104, 2017

6

WL 11037420, at *2 (6th Cir. Aug. 18, 2017). The Court concluded, "Because Pinchon's mandatory sentence of life with the possibility of parole after 51 years is arguably the functional equivalent of a mandatory sentence of life without parole, we conclude that Pinchon has made a prima facie showing that the rule of constitutional law established in *Miller* and *Montgomery* is retroactively applicable to him." *Id.*

After the Sixth Circuit finished its prima facie review, Pinchon, represented by a federal defender, filed an amended petition for a writ of habeas corpus. The amended petition states in part, "Pinchon's sentence is unconstitutional because it was mandatorily imposed for a crime he committed as a juvenile, because it categorically denies him parole, and because it requires him to serve a sentence of 51 to 60 years without any opportunity to gain release by showing his crime did not reflect irreparable corruption." (Doc. 25, PageID.85.)

In June 2018, this Court referred all pretrial matters in this case to Magistrate Judge Newbern. In September 2020, she issued a report and recommendation to deny Pinchon's petition. (Doc. 41.)

Both Pinchon and Russell Washburn, the warden of Pinchon's correctional facility, object to Magistrate Judge Newbern's report and recommendation. (Doc. 42, 43.)

## II.

When, as here, a party objects to a Magistrate Judge's report and recommendation, the Court reviews the issues raised by the objection de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

7

## III.

### A.

Absent Pinchon's objections, the resolution of his petition would seem to involve a straightforward application of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Sixth Circuit's decision in *Atkins v. Crowell*, 945 F.3d 476 (6th Cir. 2019).

Under AEDPA, if a state court "adjudicates [a petitioner's claim] on the merits," then a federal court cannot issue a writ of habeas corpus based on that claim unless (1) the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of" a U.S. Supreme Court holding or (2) "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

Here, the Tennessee Court of Criminal Appeals adjudicated Pinchon's claim based on *Miller* and *Montgomery* "on the merits." In particular, it recognized that *Miller* applied retroactively, but found that it did not warrant granting Pinchon relief because "[Pinchon] did not receive a mandatory sentence of life without the possibility of parole, as contemplated by *Miller*." (Doc. 27-4, PageID.296.)

Given that "on the merits" determination by the state appellate court, *Atkins* appears to be right on point. In that case, Howard Atkins, like Pinchon, was convicted by a Tennessee jury of committing a murder when he was minor. 945 F.3d at 477. And just like Pinchon, Atkins was sentenced to life—he had to spend at least 51 years in prison. *Id.* And, also like Pinchon, Atkins presented a *Miller* claim to the Tennessee Court of Criminal Appeals. And, like here, that state appellate court "distinguished *Miller* because, unlike the juveniles in [*Miller*], Atkins could be released after 51 years' imprisonment and so was 'not serving a sentence of life without the possibility of parole.'" *Id.* Turning to § 2254(d), the Sixth Circuit

8

found that the Tennessee appellate court's adjudication of Atkin's claim did not result in a decision that was "contrary to" *Miller*: "Whether read broadly or narrowly, *Miller* creates a legal rule about life-without-parole sentences. And, whether one looks at Atkins's sentence formally or functionally, he did not receive a life-without-parole sentence." *Id.* at 478. As for the "unreasonable application" route to bypassing § 2254(d), the Sixth Circuit explained that because Atkins was not sentenced to life without the possibility of parole, he was advocating for an extension of *Miller*. And "[a] state decision cannot have unreasonably applied a Supreme Court precedent if a habeas petitioner needs a federal court 'to extend that precedent' to obtain relief." *Id.* at 479. Thus, Atkins could not clear § 2254(d)'s bar to the issuance of a writ of habeas corpus. *Id.* at 479–80.

All of that seems straightforward enough. And all of that seems to dictate the outcome here. Indeed, Magistrate Judge Newbern asked for supplemental briefing on *Atkins*, duly considered the supplemental briefs, and in a well-reasoned report, found that *Atkins* dictates that § 2254(d) bars relief.

**B.**

Pinchon disagrees with the Magistrate Judge. And in two of his objections, he asks this Court to take a hard look at the Tennessee Court of Criminal Appeals' opinion. A meticulous focus on the words the state appellate court used, argues Pinchon, reveals that its decision is "contrary to" Supreme Court precedent or is "based on an unreasonable determination of the facts" (or both). Either way, Pinchon says he has cleared § 2254(d)'s bar to the writ. And once past that hurdle, Pinchon argues that this Court can examine his *Miller* claim de novo and find, like two Court of Appeals judges have suggested, that *Miller* applies to his 51-year sentence. *See Starks v. Easterling*, 659 F. App'x 277, 284 (6th Cir. 2016) (White, J., concurring)

9

("Although [Tennessee's] statute nominally distinguishes between life and life without parole, there is effectively no difference where release eligibility begins only after 51 to 60 years of service on the sentence. . . . Thus, I conclude that Starks's mandatory life sentence violates *Miller*."); *Atkins v. Crowell*, 945 F.3d 476, 481 (6th Cir. 2019) (Cole, C.J., concurring) ("[T]he logic of *Roper*, *Graham*, *Miller*, and *Montgomery* ineluctably extends not only to de jure life without parole sentences but also to de facto ones: both types of sentences deny a child offender a chance to return to society.").

The Court considers first Pinchon's objection that the Tennessee Court of Criminal Appeals' decision is "contrary to" Supreme Court precedent; it then examines his objection that the state court's decision was "based on an unreasonable determination of the facts."

## C.

To understand Pinchon's first objection, additional details about *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), are useful. A threshold issue in *Montgomery* was whether the U.S. Supreme Court could review the Louisiana Supreme Court's decision to not give *Miller* retroactive effect. 136 S. Ct. at 727. Because Montgomery's *Miller* claim was brought in a state collateral proceeding, an argument was made that the Louisiana Supreme Court merely held that certain relief was not available in its state's collateral proceedings—i.e., the highest court in the state made a ruling on state law. *Id.* If that were true, the Louisiana Supreme Court's decision would not be reviewable. *Id.* On the other hand, if the Federal Constitution both established a rule *and* required that the rule apply retroactively, then the Supreme Court could review the Louisiana Supreme Court's refusal to give *Miller* retroactive effect. *Id.* This is because "States may not disregard a controlling, constitutional command in their own courts." *Id.* In finding that it could review the Louisiana Supreme Court's decision, the U.S.

10

Supreme Court "h[e]ld that when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule." *Id.* at 729. And the Court similarly stated, "If a state collateral proceeding is open to a claim controlled by federal law, the state court has a duty to grant the relief that federal law requires." *Id.* at 731 (internal quotation marks omitted).

With that additional information about *Montgomery*, the Court turns to Pinchon's first objection to the Magistrate Judge's report. Although Pinchon's objections are not completely clear to this Court, it appears that this first objection is in fact two closely related arguments.

In one version of the objection, Pinchon points out that *Montgomery* "h[e]ld that when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule." (Doc. 43, PageID.413 (quoting 136 S. Ct. at 729).) According to Pinchon, a "rule of constitutional law controls the outcome of a case" when the "logic of the rule newly justifies an outcome in the petitioner's favor." (Doc. 43, PageID.413.) And, Pinchon thinks that is just the case here: according to Judge White, Chief Judge Cole, and perhaps other judges, the logic of *Miller* applies to an at-best 51-year sentence. (Doc. 43, PageID.414.) And so, under *Montgomery*, the Tennessee Court of Criminal Appeals was "require[d] . . . to give retroactive effect to that rule," *id.* at 729. It did not do so, and so its decision is "contrary to" *Montgomery*. If follows, says Pinchon, that he has cleared § 2554(d).

This Court is not persuaded. *Montgomery* held that "when a new substantive *rule* of constitutional law controls the outcome of a case," a state court must give the rule retroactive effect. 136 S. Ct. at 729 (emphasis added). *Montgomery* did not say that when the "logic" of a new rule *may* control the outcome of a case, a state court must give the logic retroactive effect.

11

Pinchon seeks to fill this silence with *Francis v. Franklin*, 471 U.S. 307 (1985). (Doc. 43, PageID.413.) In *Francis*, the Supreme Court applied a constitutional rule in a scenario slightly different than the one in which the rule originated. *See id.* at 316–17. And it found that the petitioner was entitled to habeas corpus relief. *Id.* at 327. So, perhaps, *Francis* applied the "logic" of a rule to grant a writ. But *Francis* did not hold that a rule controls the outcome of a case as that phrase is used in *Montgomery* whenever the rule's logic controls the outcome of a case—*Francis* was decided decades before *Montgomery*. So Pinchon has not persuaded this Court that *Montgomery*'s holding required the Tennessee Court of Criminal Appeals to apply the "logic" of *Miller*. As for *Miller*'s *rule*, the Sixth Circuit has stated, "*Miller* creates a legal rule about life-without-parole sentences." *Atkins*, 945 F.3d at 478. Pinchon's sentence is not life without parole. As such, Pinchon has not shown that the Tennessee Court of Criminal Appeals acted contrary to *Montgomery*'s requirement to give effect to "a new substantive rule of constitutional law [that] controls the outcome of a case."

That leaves the second variant of Pinchon's first objection. As noted above, in *Montgomery* the Supreme Court also said, "If a state collateral proceeding is open to a claim controlled by federal law, *the state court has a duty to grant the relief that federal law requires*." 136 S. Ct. at 731 (emphasis added). In Pinchon's view, the Tennessee Court of Criminal Appeals did not fulfill this duty. (*See* Doc. 25, PageID.101–102; Doc. 43, PageID.415–416.) Pinchon points out that the Tennessee court focused on what *Miller* "compelled": "While the next logical step may be to extend protection to these types of sentences, that is not the precedent which now exists. We are not *compelled* to grant [Appellant's] request to expand the meaning of the *Miller* holding." (Doc. 27-1, PageID.250 (emphasis added); *see also* Doc. 43, PageID.414.) According to Pinchon, this language shows

12

that the Tennessee Court of Criminal Appeals mistakenly believed that it could grant him relief only if *Miller* "compelled" a finding that his sentence was unconstitutional (Doc. 43, PageID.413–414), i.e., only if the narrowest interpretation of *Miller*'s holding dictated that his sentence was unconstitutional. Apparently, Pinchon thinks that *Montgomery* demands that the Tennessee appellate court first determine the scope of *Miller*'s holding (which may or may not be limited to life-without-parole sentences), and only after that, decide whether his sentence fell within that scope. (*See* Doc. 43, PageID.415–416.) So, argues Pinchon, the Tennessee Court of Criminal Appeals did not fulfill its "duty to grant the relief that federal law requires," *Montgomery*, 136 S. Ct. at 731. And thus, its decision is "contrary to" *Montgomery*.

The Court is not convinced that the Tennessee Court of Criminal Appeals failed to determine *Miller*'s scope and instead assumed that it could not grant relief unless *Miller* "compelled' it to do so. That court stated, "In *Miller*, the Supreme Court held that 'the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.'" (Doc. 27-1, PageID.250 (quoting *Miller*, 567 U.S. at 479).) And later in its opinion, "[Appellant] did not receive a mandatory sentence of life without the possibility of parole, as contemplated by *Miller*." (Doc. 27-1, PageID.250.) Those statements sound like an interpretation of *Miller*'s scope. And only after making those statements did the Tennessee Court of Criminal Appeals quote its earlier opinion in *Perry*: "While the next logical step may be to extend protection to these types of sentences, that is not the precedent which now exists. We are not compelled to grant the [Appellant's] request and expand the meaning of the *Miller* holding." (Doc. 27-1, PageID.250 (quoting *Perry v. State*, No. W2013-00901-CCA-R3PC, 2014 WL 1377579, at *5 (Tenn. Crim. App. Apr. 7, 2014)).) Taking all this together then, the Tennessee Court of Criminal Appeals interpreted *Miller* and then, in quoting

13

*Perry*, indicated that the Eighth Amendment's prohibition on "cruel and unusual punishment" might in a future case be expanded to prohibit sentencing juvenile offenders to lengthy term-of-years sentences, but it did not feel "compelled," i.e., persuaded, to expand the prohibition in Pinchon's case. Thus, the Tennessee Court of Criminal Appeals did not simply assume that it could not grant relief unless the narrowest interpretation of *Miller*'s holding compelled it to do so. As such, the Tennessee court did not fail "to grant the relief that federal law requires," *Montgomery*, 136 S. Ct. at 731 (emphasis added).

In sum, under either variant of his first objection, Pinchon has not shown that the Tennessee Court of Criminal Appeals' adjudication of his Miller claim resulted in a decision that is "contrary to" *Montgomery* as that phrase is used in 28 U.S.C. § 2254(d) and as that phrase was applied in *Atkins*.

### D.

In his second objection to the Magistrate Judge's report, Pinchon argues that the Tennessee Court of Criminal Appeals' decision is "based on an unreasonable determination of the facts," and thus, he clears § 2254(d)'s bar to the writ. In its opinion, the state appellate court stated, "Although [Tennessee Code § 40-35-501(i)(1)] does not refer to a sentence of life as one *with the possibility of parole*, a defendant sentenced to life for a first degree murder conviction occurring after July 1, 1995, is *eligible for release* after serving at least fifty-one years." (Doc. 27-1, PageID.250 (emphasis in original).) Based on the court's use of emphasis, Pinchon argues that "the TCCA indicated that it believes that [he] will have the possibility of something that is the functional equivalent of parole." (Doc. 43, PageID.416.) "But, as a matter of fact," says Pinchon, "[he] is not eligible for parole or for any functional equivalent." (Doc. 43, PageID.417.) Pinchon points out that he "will never face a parole board or any decision-

14

maker that would consider whether he deserves release in light of reformation and circumstances surrounding the offense." (*Id.*) So, says Pinchon, the Tennessee Court of Criminal Appeals' decision rested on "an erroneous premise by presuming that a 'life' sentence is essentially the same thing as a sentence of 'life with the possibility of parole." (*Id.*)

The Court is again not persuaded. In the passage with the emphasized language, the Tennessee Court of Criminal Appeals was correctly recognizing that similar to a life with parole sentence, Pinchon is not guaranteed to spend the rest of his days in prison. So this Court perceives no factual error. And even if the state court made a factual error, this Court fails to see how the state court's decision is "based on" that error as § 2254(d)(2) requires. The Tennessee Court of Criminal Appeals stated, "The Appellant in this case received a sentence of life, which carries the possibility of release, albeit after fifty-one years. He did not receive a mandatory sentence of life without the possibility of parole, as contemplated by *Miller*." (Doc. 27-1, PageID.250.) So whether Pinchon's sentence is or is not similar to a life-with-parole sentence, the bottom line for the Tennessee Court of Criminal Appeals was that Pinchon's sentence was not life *without* parole—the sentence at issue in *Miller*.

Pinchon's second objection will thus be overruled.

## E.

Pinchon makes a third objection too, but it is not one that this Court need address. He argues that the Tennessee Court of Criminal Appeals unreasonably applied *Miller*. But Pinchon recognizes that this argument is foreclosed by the Sixth Circuit's decision in *Atkins v. Crowell*, 945 F.3d 476 (6th Cir. 2019). (Doc. 43, PageID.418.) As Pinchon makes the objection only to preserve the issue for federal appellate courts, this federal trial court will say nothing more about it.

In short, Pinchon's objections to the Magistrate Judge's report and recommendation will be overruled.

**IV.**

What has been said so far would be the end of the matter in most cases—a magistrate judge made a recommendation unfavorable to one party, that party objected, and a district judge overruled those objections. But in this case, the party that prevailed before the magistrate judge, Warden Washburn, has also filed two objections.

Both of the Warden's objections are based on 28 U.S.C. § 2244(b)(4). Section 2244(b)(4) states, "A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section," i.e., § 2244. Section 2244 has several requirements. One is that a claim in a successive petition must be based on a new, retroactive constitutional rule or previously undiscovered facts. *See* 28 U.S.C. § 2444(b)(2). Another requirement of § 2244 is the petition be timely filed. *See* 28 U.S.C. § 2444(d)(1). In the Warden's view, Pinchon has met neither of these requirements. And, argues the Warden, "the Magistrate Judge erred by not conducting any analysis under § 2244(b)(4) as it was statutorily required to do." (Doc. 42, PageID.404.)

**A.**

The Court first addresses the Warden's objection that the Magistrate Judge erred in not deciding whether Pinchon's claim relies on a new, retroactive constitutional rule.

To understand this argument, some legal background is useful. To oversimplify slightly, under § 2244(b)(2), a successive petition "shall be dismissed" unless one of two

exceptions are satisfied: the petitioner's claim relies on a new, retroactive constitutional rule or the claim is based on facts not previously discoverable through due diligence. The federal appellate courts and the federal district courts each have role to play in enforcing § 2244(b)(2)'s prohibition on successive petitions. Under § 2244(b)(3)(C), the federal appellate courts decide whether the petitioner has a made "a prima facie showing" that his claim falls within one of the two exceptions. But even when the federal appellate court makes that determination, § 2244(b)(4) requires the federal district court to make an independent determination as to whether the § 2244(b)(2)'s successive-petition bar applies or whether one of the two exception applies. *See Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) ("[A] court of appeals may authorize [a successive] filing only if it determines that the applicant makes a 'prima facie showing' that the application satisfies the statutory standard. But to survive dismissal in district court, the applicant must actually 'sho[w]' that the claim satisfies the standard." (internal citations omitted)); *In re Embry*, 831 F.3d 377, 378 (6th Cir. 2016) ("Embry need only make a 'prima facie' showing of an entitlement to relief, and the district court is free to decide for itself whether Embry's claim relies on a new rule made retroactive by the Supreme Court." (internal citations omitted)). So even though the Sixth Circuit authorized Pinchon to file a successive petition, § 2244(b)(4) places an obligation on this Court to independently decide whether Pinchon's claim satisfies one of the two exceptions for successive petitions. The exception that is relevant here is set out in § 2244(b)(2)(A): "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

With that background on § 2244(b), the Warden's first objection can be readily understood. In issuing her report, the Magistrate Judge did not mention § 2244(b) and did not

make any recommendation as to whether Pinchon's claims relies on a new, retroactive constitutional rule. In the Warden's view, § 2244(b)(4) required the Magistrate Judge—and requires this Court—to make a finding as to whether Pinchon's claim fell within the exception for successive petitions provided by § 2244(b)(2)(A). (Doc. 42, PageID.407.)

On the facts of this case, it was not error for the Magistrate Judge to bypass § 2244(b)(4) and instead recommend dismissal on other grounds. As an initial matter, it appears that § 2244(b)(4), the rule requiring district courts to dismiss claims in a successive petition if they do not satisfy § 2244's requirements, is not jurisdictional. In recent years, the Supreme Court has emphasized that claim-processing rules—even mandatory ones—are different from rules that affect a court's jurisdiction: "A rule is jurisdictional if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional." *Gonzalez v. Thaler*, 565 U.S. 134, 141, (2012). And the Sixth Circuit has stated that § 2244(b)(4) does not "'clearly state' a jurisdictional bar." *Williams v. United States*, 927 F.3d 427, 438 (6th Cir. 2019) (quoting *Gonzalez*, 565 U.S. at 141). Secondly, the Warden in this case failed to make any argument in favor of a successive-petition bar when answering Pinchon's petition. In fact, the Warden's answer suggested that there was no such bar: "The amended petition constitutes a second habeas petition . . . . However, Petitioner has properly and successfully sought authorization to proceed on this petition from the court of appeals." (Doc. 28, PageID.324.) It was not until this case had been pending for years and after the Magistrate Judge sought supplemental briefing on *Atkins* that the Warden—for the first time—asserted § 2244(b)(2)'s successive-petition bar. Given the procedural posture, and given that Pinchon's petition was subject to dismissal on other grounds, the Court is not convinced that the Magistrate Judge

18

erred in not making a finding under § 2244(b)(4). And for the same reason, this Court need not make that finding, either.

But supposing otherwise, Pinchon has "show[n] that [his] claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2244(b)(2)(A).

The Warden homes in on the word "relies" in the statute. According to the Warden, the Sixth Circuit held in *Atkins* that "*Miller* create[d] a legal rule about life-without-parole sentences" and Pinchon was not sentenced to life without parole. (Doc. 42, PageID.407.) So, the Warden concludes, Pinchon's claim cannot "rel[y]" on *Miller*. (*See id.*)

Pinchon's claim clearly relies on *Miller*. Without *Miller*, Pinchon would have to lay a new foundation to show that his sentence was prohibited by the Eighth Amendment. But with *Miller*, Pinchon's argument is, at most, a remodel. Indeed, in his view and the view of some Court of Appeals judges, *Miller*'s logic applies to lengthy term-of-years sentences. So Pinchon's claim "relies" on *Miller*. *Cf. In re Hoffner*, 870 F.3d 301, 309 (3d Cir. 2017) (providing—for purposes of a prima facie showing—a claim that seeks a "non-frivolous extension" of new constitutional rule "relies" on that rule).

In further support of this conclusion, the Court notes that Sixth Circuit granted Pinchon authorization to file a successive petition based on *Miller*. To be sure, that was merely a determination that Pinchon had made a prima facie showing. But the Sixth Circuit was fully aware that the sentence at issue in *Miller* was different than Pinchon's sentence: "Because Pinchon's mandatory sentence of life with the possibility of parole after 51 years is arguably the functional equivalent of a mandatory sentence of life without parole, we conclude that Pinchon has made a prima facie showing that the rule of constitutional law established in *Miller*

and *Montgomery* is retroactively applicable to him." *In re Pinchon*, No. 17-5104, 2017 WL 11037420, at *2 (6th Cir. Aug. 18, 2017). In other words, despite being aware of the differences in the two sentences, the Sixth Circuit found that Pinchon had made a prima facie showing that his claim "relies" on *Miller*.

In short, the Court finds that it is not necessary to resolve the successive-petition issue because other grounds are dispositive and because the Warden did not raise the issue in his answer. But if § 2244(b)(4) nonetheless requires the Court to address that issue, Pinchon has "show[n] that [his] claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2244(b)(2)(A).

## B.

In his second objection, the Warden again points to the district court's obligation under § 2244(b)(4). (*See* Doc. 42, PageID.408.) Recall that under § 2244(b)(4), "A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section," i.e., § 2244. One of § 2244's requirements is that a petition be filed within one year of the latest of four dates. The date that is relevant in this case is "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). The Warden argues that *Miller* was decided in 2012. (Doc. 39, PageID.369.) Yet, says the Warden, Pinchon did not file his petition until 2016. (*See id.*) Thus, says the Warden, Pinchon's petition is too late. And, the Warden argues,

20

§ 2244(b)(4) obligated the Magistrate Judge—and obligates this Court—to make that finding. (Doc. 42, PageID.408.)

This Court disagrees. As already stated, § 2244(b)(4) is not a limit on this Court's jurisdiction. And even if § 2244(b)(4) requires this Court to address a potential statute-of-limitations bar in some cases, this is not such a case. The Warden acknowledges that "[a] statute-of-limitations defense is typically forfeited 'if not raised in a defendant's answer or in an amendment thereto.'" (Doc. 42, PageID.408); *see also Day v. McDonough*, 547 U.S. 198, 202 (2006) (discussing § 2244(d)(1)'s statute-of-limitations bar and providing "[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto."). And here, the Warden's answer indicated that Pinchon's petition was timely: "the amended petition was untimely filed because it was filed after the statute of limitations expired on July 13, 2017. However, the amended petition relates back to the original petition because Petitioner's counsel restated the claims in the original petition as instructed by the Court. *Consequently, the amended petition may be addressed*." (Doc. 28, PageID.324 (emphasis added).) It was not until the Magistrate Judge requested supplemental briefing on *Atkins* that the Warden, for the first time, claimed that Pinchon's petition was untimely. (Doc. 39, PageID.369.) Indeed, the Warden concedes, "In the answer, Respondent submitted that the petition was timely filed." (Doc. 42, PageID.403.) As such, it appears that the Warden forfeited a statute-of-limitations defense.

The Warden thinks otherwise, claiming that his "supplemental brief can be considered a court-ordered, amended pleading to his original answer due to intervening case law." (Doc. 42, PageID.408.) But what intervening case law? Apparently, the Warden is referring to *Atkins*. But from the very outset of this case the Warden knew Pinchon's claim was based on *Miller*,

21

knew *Miller* was decided in 2012, and knew that Pinchon filed his petition in 2016. Maybe *Atkins* strengthened the Warden's statute-of-limitations defense (although it is not apparent how), but even without *Atkins*, the Warden had enough to raise the defense in his answer. Yet he did not. In any event, a supplemental brief is not a motion to amend an answer.

The Warden also argues that his wavier in his answer was inadvertent. (Doc. 42, PageID.409.) By claiming inadvertence, the Warden seeks to invoke an exception to waiver set out in *Day v. McDonough*, 547 U.S. 198 (2006). There, the district court "confronted no intelligent waiver" of the statute-of-limitations bar set out in § 2244(d)(1). *Id.* at 202. But here, it is questionable that the Warden's waiver was inadvertent—it certainly did not involve the mistaken understanding of the law at issue in *Day*. *See id.* ("[H]ad the State followed the Eleventh Circuit's instruction on computation of elapsed time, the timeliness concession would not have been made."). But even if the Warden's waiver was inadvertent, *Day* merely says that this Court may raise timeliness sua sponte—not that it must. *See id.* at 209.

In short, this Court agrees with the Magistrate Judge: "In light of [the Warden's] acknowledged waiver, and considering the late stage of these proceedings, the Court declines [the Warden's] invitation to consider the timeliness of Pinchon's amended petition sua sponte." (Doc. 41, PageID.393.)

* * *

Given the Warden's answer and the subsequent procedural history, and given that Pinchon's petition will be denied on other grounds, § 2244(b)(4) does not require this Court to address the successive-petition bar of § 2244(b)(2) or the timeliness bar of § 2244(d)(1). The Warden's objections will be overruled.

## V.

For the reasons given, the Court ADOPTS Magistrate Judge Newbern's report and recommendation (ECF No. 41), overrules Pinchon's objections (ECF No. 43), and overrules Warden Washburn's objections (ECF No. 42). For the reasons provided in her report, and for the reasons set out in this opinion, Pinchon's petition for a writ of habeas corpus is DENIED.

The Court believes that reasonable jurists could debate whether 28 U.S.C. § 2254(d) bars Pinchon's petition for a writ of habeas corpus. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). And reasonable jurists could debate whether *Miller*'s holding extends to Pinchon's sentence. So the Court GRANTS Pinchon a certificate of appealability. And if Pinchon chooses to appeal, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: March 31, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE